# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Alan McKenzie,<br><br>   Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of the Social Security Administration,<br><br>   Defendant. | CV 11-0784-TUC-FRZ (JR)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Michael Alan McKenzie brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Plaintiff presents four issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly evaluated examining physician Dr. Rothbaum's opinions; (2) whether the ALJ properly evaluated examining psychologist Dr. Rau's opinions; (3) whether the ALJ properly relied on Social Security Ruling 85-15 in lieu of obtaining testimony from a

1

vocational expert; and (4) whether the ALJ properly evaluated lay witness statements. Pending before the court is an Opening Brief filed by Plaintiff (Doc. 14), the Commissioner's Opposition (Doc. 15), and Plaintiff's Reply Brief (Doc. 16). Based on the pleadings and the administrative record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, remand this case for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits in May 2009. (Administrative Record (AR) 109-32.) The Social Security Administration denied Plaintiff's application for DIB initially and upon reconsideration. (AR 102, 103.) Plaintiff requested a hearing before an ALJ. (AR 55-56.) An initial hearing was held on January 27, 2011, after which the ALJ determined there was insufficient medical evidence to decide the claim and therefore postponed the hearing and order mental and physical consultative examinations of the Plaintiff. (AR 88-101.) A second hearing was then conducted on June 7, 2011. (AR 60-87.) In a decision issued on June 17, 2011, the ALJ concluded that Plaintiff was not disabled within the meaning of the SSA. (AR 20-28.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1-4.) This appeal followed.

## II. FACTUAL HISTORY

### A. Plaintiff's Background

Plaintiff was 52 years old at the time of the hearing and had attended some college, but had not obtained a degree. (AR 27, 338.) His past relevant work was in

1  construction and he last worked as a laborer for a water department, but he was
2  terminated for "excessive absenteeism" in August of 2008 because he missed too
3  much work due primarily to caregiver obligations for his mother and also due to his
4  own neck and back problems. (AR 66-67, 163, 191.) Plaintiff alleges disability
5  since May 2001 due to depression and back problems. (AR 163.)

6      **B.**    **Medical Records**

7          **1.**    **Physical Impairment**

8  On September 27 or 28, 2002, Plaintiff was in an automobile accident and was
9  subsequently seen by Family Practitioner Jorge O'Leary, M.D., complaining of neck
10 and mid-back pain. (AR 284, 285.) Dr. O'Leary ordered x-rays and physical
11 therapy. (AR 283.) Plaintiff was seen by a physical therapist on February 12, 2003.
12 His care plan prepared by the physical therapist consisted of exercise, manual
13 therapy, postural education, and heat and ice as needed. (AR 271.) In a January
14 2005 letter to Plaintiff's lawyer, Dr. O'Leary reported a diagnosis of a whiplash
15 injury and noted that Plaintiff continued to have discomfort with neck and shoulder
16 movement. (AR 279-80.) Dr. O'Leary also noted that the Plaintiff had been
17 discharged from care and was prescribed Naprosyn and advised to expect some
18 residual pain. (AR 280.)

19 An x-ray examination from July 30, 2004, revealed mild degenerative changes
20 and small anterior hypertrophic osteophyte formation in the mid-thoracic spine; a
21 slight anterior subluxation of L4 on L5 with mild to moderate disc space narrowing
22 in the lumbar spine. (AR 277.)

1    Plaintiff was then referred by his lawyer to Orthopedic Surgeon Mark Frankel,
2 M.D., who saw Plaintiff on October 21, 2005. (AR 285.) Dr. Frankel reported
3 Plaintiff was complaining of neck pain, dizziness, mid-back pain, and headaches
4 related to the weather. (AR 286.) Upon examination, Dr. Frankel found Plaintiff
5 suffered a limited range of motion in his neck and full range of motion in his back.
6 (AR 288.) After reviewing other medical records, Dr. Frankel recommended that
7 Plaintiff do range of motion exercises at home and noted that intermittent physical
8 therapy might be necessary. He stated that Plaintiff's Tylenol and Ibuprofen
9 medications were appropriate, and found that surgery was not warranted at that time,
10 but might become appropriate in the future. (AR 289.)

11    In March 2011, Jerome Rothbaum, M.D., performed a consultative
12 examination of the Plaintiff at the request of the ALJ. (AR 337-46.) Dr. Rothbaum
13 noted Plaintiff's auto accident history and his occupational background. (AR 337-
14 38.) He noted that Plaintiff appeared "profoundly depressed," crying and apathetic in
15 appearance. (AR 338.) After examination, Dr. Rothbaum's impression was that
16 Plaintiff's most significant impairment was depression, and that he suffered from
17 myofascial cervicalgia and low back pain. (AR 339.)

18    Dr. Rothbaum also completed a medical source statement of Plaintiff's ability
19 to do physical work-related activities. (AR 340-46.) The doctor indicated that
20 Plaintiff could lift and/or carry 21-50 pounds frequently; sit four hours at a time for
21 up to eight hours in a workday; stand and/or walk for two hours at a time and for six
22 hours per workday; and frequently (one-third to two-thirds of the time) reach in all

4

directions, handle, finger, feel, push, and pull, operate foot controls, climb, balance, stoop, kneel, crouch, crawl, and be exposed to various environmental conditions. (AR 341-344.)  He reported also that Plaintiff could shop, travel without a companion, ambulate without assistance, climb steps, prepare meals, sort and use paper files, and take care of his own personal hygiene. (AR 345.)

### 2. Mental Impairment

Plaintiff presented to the La Frontera Center for therapy six times beginning in February of 2010 after his probation officer referred him for his depression. (AR 300-23.) He was diagnosed with a major depressive order and cannabis abuse. (AR 302.) He reported two prior suicide attempts, in 1997 and in 2009. (AR 314.) Plaintiff was prescribed medication for his depression. (AR 303.)

In February 2011, Plaintiff saw James Rau, Ph.D., for psychological evaluation at the request of the ALJ. (AR 324-31.) The examination and testing lasted three hours. (AR 329.) Dr. Rau observed that Plaintiff had a constricted affect; was tearful, nervous, anxious, stressed out, and worried, and had episodic suicidal ideation, but that his though process and content, orientation, insight, judgment, expressive and receptive language abilities, cooperation, and effort were all unremarkable. (AR 324-31.) Addressing Plaintiff's functional status, Dr. Rau noted that Plaintiff managed his activities of daily living without much difficulty, including grooming, household chores, shopping, cooking, babysitting his grandchild, managing money, driving, and playing guitar for pleasure. (AR 327-30.) Intelligence testing showed a Full Scale IQ of 99, which was in the "average range."

5

1  (AR 328.) Dr. Rau opined that Plaintiff had a normal memory, processing speed, reasoning ability, and knowledge, but that he had some "inefficiency" with his memory "across the board." (AR 330.) Dr. Rau also believed that Plaintiff's prognosis for near term improvement was "quite guarded," and noted he was not then in treatment. (AR 330.)

Dr. Rau also completed a psychological medical source statement. (AR 332-34.) Dr. Rau indicated that Plaintiff's understanding and memory were moderately limited, finding he could understand basic instructions and could register information if it was well-organized for him, but had "a bit of inefficiency and . . . is very deficient with his registration of any visual-spatial type of information." (AR 332.) His concentration and persistence were also moderately limited because, although he could follow instructions, he episodically would be pulled off task due to anxiety and depression. (AR 332.) His social interaction was also described as moderately limited because he would have difficulty dealing with criticism. (AR 332.) His adaption and ability to get around on his own were described as not significantly limited. (*Id*.) Dr. Rau felt that the limitations would persist for more than 12 months. (AR 332.)

Dr. Rau also completed a medical source statement in relation to Plaintiff's mental ability to do work related activities. (AR 334-36.) In that statement, Dr. Rau indicated that Plaintiff, due to his memory problems, high anxiety, and depression, was mildly limited in his ability to understand and remember simple instructions; moderately limited in his ability to carry out those instructions; mildly limited in the

1  ability to make simple work-related judgments; moderately to markedly limited in
2  the ability to understand, remember and carry out complex instructions; and
3  moderately limited in the ability to make complex work-related judgments.  (AR
4  334.)  Dr. Rau also found Plaintiff moderately limited in the ability to interact with
5  the public, supervisors, co-workers, and to work situations and changes in his work
6  routine.  (AR 335.)

7        **C.**      **Hearing Testimony**

8            **1.**      **Plaintiff's Testimony**

9       At the June 7, 2011, hearing, Plaintiff was represented by counsel and testified
10 that he was not then working, but had previously worked for the City of Tucson in
11 construction for the water department.  (AR 66.)  He said he was discharged for
12 excessive absenteeism, about a day or two a month, due to him being obligated to be
13 a caregiver to his mother and grandmother and due to his neck and back pain.  (AR
14 67, 74.)  When asked if physical problems prevented him from doing his job, the
15 Plaintiff stated that the jobs he could get "can't pay anything, and I couldn't find a
16 good job and that I'm not going to have the benefits I had or promotions or be able to
17 make the money that I had . . ."  (AR 71-72.)

18      He explained that depression had overwhelmed him and that he had several
19 interviews, but did not get called back.  (AR 72.)  He did find some work installing
20 water lines and fire hydrants in new subdivisions, but found that his depression and
21 back pain prevented him from doing the work which he described as more
22

7

demanding than what he had done for the City of Tucson water department. (AR 76.)

He told the ALJ that he had been taking anti-depressants, but that he had permission to "try not taking no more, go without them for a little while." (AR 72.) He stated that he first attempted suicide at the age to 13 or 14 and has had frequent thoughts of suicide since then. (AR 80-81.) The most recent instance was when his dogs were accused of something that he believed they did not due and were taken away by animal control. (AR 81-82.) Plaintiff described that he spent his time babysitting, playing guitar, cooking and cleaning. (AR 73-74.)

### 2. Vocational Expert Testimony

The ALJ asked Vocation Expert ("VE") Kathleen McAlpine whether there would be any jobs for an individual of Plaintiff's age (55) and education (high school and some college), with Plaintiff's work experience (patient technician), with the following limitations:

- lift/carry 21 to 50 pounds frequently;
- sitting continuously for four hours, and eight total;
- standing continuously for two hours, six hours total; and
- walking continuously for two hours; six hours total.

(AR 63-64.) The VE testified that such an individual had the residual functional capacity ("RFC") to perform light work, particularly due to the sitting and walking limitations. (AR 64.)

The ALJ then added the following mental limitations:

8

- moderate limitations in understanding and memory;

- moderate limitations with sustained concentration and persistence;

- able to carry out simple instructions and make simple work-related decisions;

- great difficulty staying focused for an extended period of time;

- moderately limited in social interaction; and

- not significantly limited in adaptation.

(AR 64.) The ALJ then added:

> How the doctor marked it was understand and carry out simple – or understand and remember simple instructions: mild. Carry them out: moderate. Make judgment, limitations are mild. Understand and remember complex and carry out complex are both marked moderate to marked. It's apparently one of those deals where if you asked for an answer to the three or four, you'd get a 3.2 from the doctor. Ability to make judgments on complex, related matters: moderate. Some memory problems, anxiety. Okay. All moderate: interact publicly, with supervisors, co-workers, and react appropriately to usual work situations and routines.

(AR 64.)

The ALJ then asked the VE how the limitations he listed affected the Plaintiff's RFC for light work. (AR 64-65.) The VE responded that "all those moderates combined would limit somebody from maintaining work." (AR 65.)

**D.     Witness Statements**

Plaintiff also submitted statements from his former attorneys, step father, wife and children describing Plaintiff's limited activities due to his physical and mental condition. (AR 226-234.)

9

**E.     ALJ's Decision**

The ALJ found that Plaintiff had the following severe impairments: myofascial pain syndrome and depression.  (AR 22.)   The ALJ found that the Plaintiff could not return to his past relevant work, but concluded that Plaintiff had the RFC to perform light work, limited to simple and unskilled jobs.  (AR 24, 27.) The ALJ then found that "considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [Plaintiff] could have performed."   (AR 27.)   The ALJ therefore concluded that the Plaintiff was not disabled. (AR 28.)

**III.    STANDARD OF REVIEW**

For purposes of Social Security benefits determinations, a disability is defined as:

> The inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. §   404.1505.

Whether a claimant is disabled is determined using a five-step evaluation process.  It is claimant's burden to show (1) he has not worked since the alleged disability onset date, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from doing his past work.  If at any step the Commission

10

determines that a claimant is or is not disabled, the inquiry ends. If the claimant satisfies his burden though step four, the burden shifts to the Commissioner to show at step five that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

In this case, Plaintiff was denied at step five of the evaluation process. The step five determination is made on the basis of four factors: the claimant's RFC, age, education, and work experience. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir.2007). The Commissioner can meet his burden at Step Five "through the testimony of a vocational expert or by reference to the Medical Vocation Guidelines." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir.2002); 20 C.F.R. pt. 404, subpt. P, app.2 (the "grids").

The ALJ's decision to deny disability benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997). In evaluating whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.1998); *see* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security

1 as to any fact, if supported by substantial evidence, shall be conclusive"). If there is
2 sufficient evidence to support the Commissioner's determination, the Court cannot
3 substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th
4 Cir.1990).

5 **IV.   DISCUSSION**

6 Plaintiff argues that the Commissioner's denial of benefits is not supported by
7 substantial evidence. *Plaintiff's Opening Brief* (Doc. 14), pp. 6-19. He contends that
8 the ALJ failed to accord the proper weight to the testimony of his examining
9 physicians, improperly relied on Social Security Ruling 85-15 instead of the VE's
10 testimony, and failed to properly evaluate the lay witness statements. *Id*. The
11 Commissioner responds that the ALJ properly considered and evaluated the medical
12 source opinions, properly relied of SSR 85-15, and properly evaluated the lay witness
13 statements. *Defendant's Opposition to Opening Brief* (Doc. 15), pp. 9-20.

14     **A.    Evaluation of Medical Opinions**

15 "The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*,
16 533 F.3d 1035, 1041 (9th Cri.2008); *see* 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996
17 WL 374183, at *2 (July 2, 1996). "[T]he ALJ may only reject a treating or
18 examining physician's uncontradicted medical opinion based on 'clear and
19 convincing' reasons." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164
20 (9th Cir.2008) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995)). "In order
21 to reject an examining physician's opinion, 'the ALJ has to give clear and convincing
22 reasons . . . . Even if contradicted by another doctor, the opinion of an examining

1  doctor can be rejected only for specific and legitimate reasons that are supported by
2  substantial evidence in the record.'"  *Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012)
3  (quoting *Regennitter v. Comm'r. of Soc. Sec. Admin.,* 166 F.3d 1294, 1298-99 (9th
4  Cir. 1999).

### 1. Dr. Rothbaum's Opinion.

After examining Plaintiff in March 2011, Dr. Rothbaum opined that Plaintiff suffered from myofascial cervical and low back pain, and that depression was "by all odds the most significant impairment . . . ." (AR 339.) As part of his evaluation, Dr. Rothbaum checked boxes that indicated Plaintiff could frequently, as opposed to constantly or occasionally, reach, handle and finger. (AR 342.) Similarly, Dr. Rothbaum checked boxes that indicated Plaintiff could only have "frequent" exposure to various environmental conditions. (AR 345.) Plaintiff seizes on the fact that the ALJ did not address this portion of the Dr. Rothbaum's opinion in determining Plaintiff's RFC to argue that "Dr. Rothbaum opined that [Plaintiff] was significantly more limited, in part, than the ALJ ultimately found." *Opening Brief*, p. 7.

As the Commissioner argues, however, Plaintiff cites no evidence in the record to support the conclusion that Plaintiff's condition limited him in any of these functional areas. More important, though, is that even if he could point to such evidence, it would not support the rejection of the ALJ's RFC determination, as the ALJ found the Plaintiff capable of performing only "light work," which was a lower level of work than that suggested by Dr. Rothbaum's finding that Plaintiff could

frequently lift and carry up to 50 pounds. Thus, if the ALJ can be said to have rejected Dr. Rothbaum's opinion at all, it was rejected in favor of a more restrictive RFC than that supported by Dr. Rothbaum's examination and report. As such, the ALJ was not required to cite clear and convincing reasons for *rejecting* the opinion, because it was not rejected.

### 2. Dr. Rau's Opinion

Addressing Plaintiff's mental ability to perform work related activities, Dr. Rau opined that Plaintiff had a major depressive order and, due to his memory problems, high anxiety, and depression, was mildly limited in his ability to understand and remember simple instructions; moderately limited in his ability to carry out those instructions; mildly limited in the ability to make simple work-related judgments; moderately to markedly limited in the ability to understand, remember and carry out complex instructions; and moderately limited in the ability to make complex work-related judgments. (AR 334.) Dr. Rau also found Plaintiff moderately limited in the ability to interact with the public, supervisors, co-workers, and to work situations and changes in his work routine. (AR 335.)

In evaluating Dr. Rau's opinion, the ALJ found that the "record shows, at most, the claimant has some limitations in concentration and persistence," but that he had an average to impaired ability to retain novel information. (AR 27.) The ALJ then stated that "there is no evidence to support finding that the claimant has moderate limitations in social interaction," and noted that the Plaintiff had not sought mental health treatment since the date last insured. (AR 27.) In reaching this

conclusion, the ALJ did not address Dr. Rau's belief that Plaintiff "will have great difficulty dealing with criticism. I think his quite prominent nervousness and anxiety may be easily noticed by others and make them ill at ease around him." (AR 332.)

On its face, this statement appears to support the finding that Plaintiff has moderate limitations in social interaction. The Commissioner argues that the ALJ appropriately discounted the opinion by relying on the record as a whole and because the opinion was "brief, conclusory, and inadequately supported by clinical findings." *Opposition Brief*, pp. 11-12. However, the ALJ was obligated to cite clear and convincing reasons for declining to adopt Dr. Rau's uncontroverted opinion. *Carmickle*, 533 F.3d at 1164. If, despite Dr. Rau's statement that Plaintiff would have difficulty dealing with criticism and that others would be ill at ease around him, the ALJ believes that Plaintiff has no limitations in social interaction, he need not discuss all the evidence presented, but must explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

### B. The ALJ Reliance on SSR 85-15

Plaintiff contends that the ALJ erred by relying on SSR 85-15, instead of relying on the testimony of the VE, as the basis for his step-five determination of non-disability. *Opening Brief*, pp. 16-17. As the Plaintiff points out, the Ninth Circuit has held that SSR 85-15 does not apply to cases in which both "exertional" and "non-exertional" impairments are at issue. *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995); *Sandgathe v. Chater*, 108 F.3d 978, 980-81 (9th Cir. 1997). In countering

this argument, the Commissioner argues that the ALJ did not adopt Dr. Rothbaum's non-exertional reaching, handling and fingering limitations and Dr. Rau's opinion that Plaintiff had moderate limitations in social interaction and, therefore, under *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007), Plaintiff's non-exertional limitations did not prohibit reliance on SSR 85-15.

The Court agrees with Plaintiff that the ALJ failed to meet his burden at step five. As discussed above, the ALJ's determination of Plaintiff's RFC was flawed by the unjustified rejection of Dr. Rau's opinion about Plaintiff's limitations in social interaction. As illustrated by the testimony of the VE at the hearing, if those limitations are included in the RFC, they would "limit somebody from maintaining work." (AR 65.) Thus, it is apparent that when the non-exertional limitations cited by Dr. Rau are included in the RFC, they may affect the range of work otherwise available. In such circumstances, reliance on SSR 85-15 in lieu of vocational testimony was error.

The inclusion of Dr. Rau's non-exertional limitation opinions also takes this case outside of *Hoopai*. In *Hoopai*, the plaintiff's depression did not result in any significant limitations which had to be included in the ALJ's RFC finding or presented to the VE. 499 F.3d at 1077. Here, however, if Dr. Rau's non-exertional limitations are not rejected, they will constitute significant limitations that likely will alter the RFC assessment. If on remand the ALJ does not reject the limitations described in Plaintiff's social interaction, VE testimony will be required.

### C. Lay Witness Statements

In addition to medical sources, the ALJ may consider statements from family, friends and others regarding the severity of a plaintiff's impairments and how the impairments impact his ability to work. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). "In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-3p, 2006 WL 2329939 at *5. Lay witness evidence is competent evidence and cannot be disregarded without providing specific reasons germane to each witness. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

In this case, Plaintiff submitted statements from his former attorneys, step father, wife and children describing his limitations due to his physical and mental condition. (AR 226-234.) Addressing these statements, the ALJ stated:

> With respect to statement by the claimant's family, the reports cannot necessarily be considered disinterested third party witness statements. Because of their relationship with the claimant, their testimony would tend to show a bias in his favor and, therefore, they would tend to show agreement in supporting the claimant's alleged symptoms and limitations, despite contrary evidence. Regarding the attorney statements, neither individuals are [sic] qualified to render an opinion regarding the claimant's impairment, and given the nature of the attorney-client relationship, their contacts with the claimant were limited to times when he was obviously stressed and required assistance with a legal matter.

(AR 27.)

17

Addressing the attorney statements, the ALJ did provide a reason germane to those two witnesses for rejecting their testimony. While both attorneys described the Plaintiff as suffering from emotional or psychiatric difficulties (AR 226-228), it is inarguably germane to attorney witnesses that those who have contacted them may be in a heightened emotional state. Thus, given the standard applicable to lay witness testimony, the reason cited by the ALJ were sufficient for rejecting these opinions.

Turning to the statements of the family members, the reasons for rejecting the testimony are not sufficient. The ALJ relied on the fact that the family members were biased based solely on their relationship with the Plaintiff. However, the mere fact that a witness may have a close relationship with the Plaintiff is not alone a sufficient basis for rejecting the lay witness testimony. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir.2009) (finding ALJ erred in rejecting lay witness testimony on basis of that witness's close relationship with claimant); *see also Valentine v. Commissioner of Social Security*, 574 F.3d 685 (9th Cir.2009) (stating evidence of specific secondary gain motive, in addition to being in a close relationship with the plaintiff, could suffice to reject testimony of plaintiff's spouse). These standards require that the ALJ cite germane reasons for rejecting the statements of family members that go beyond the mere relationship between the witness and the Plaintiff.

**D.    Remedy**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order an immediate award of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Ordinarily,

18

when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional proceedings. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). Generally, an award of benefits is appropriate only when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before the determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d at 1292. An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, there are outstanding issues to be resolved. On remand, the ALJ must reevaluate Dr. Rau's non-exertional limitations and, in light of that reevaluation, determine whether the testimony of a VE is required. Additionally, if the ALJ rejects the lay witness statements of Plaintiff's family members, he must provide proper and germane reasons for doing so. As such, the Court recommends that this matter be remanded to allow the ALJ to resolve these outstanding issues.

**V.     RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge **recommends** the District Court, after its independent review, enter an order remanding the case to the ALJ for further proceedings consistent with this Report and Recommendation.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report

and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: CV 11–784–TUC–FRZ.

Dated this 25th day of July, 2013.

*Jacqueline M. Rateau*
Jacqueline M. Rateau
United States Magistrate Judge